IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

METROMONT CORPORATION       :
                            :
    v.                      :   Civil Action No. DKC 18-3928
                            :
ALLAN MYERS, L.P.           :
                            :

**MEMORANDUM OPINION**

Defendant/Counter-Plaintiff Allan Myers, L.P. ("Myers") filed a motion to stay, or in the alternative, motion to dismiss in this breach of contract case on February 15, 2019. (ECF No. 13). Myers filed a motion for more definite statement of the first affirmative defense in Plaintiff/Counter-Defendant Metromont Corporation's ("Metromont") answer on March 21, 2019. (ECF No. 22). The issues are briefed and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Myers' motions will be denied.

**I. Background**

Metromont's claim stems from a contract ("prime contract") the City of Baltimore's Department of Public Works ("the City") awarded to Myers in 2009.[1] (ECF No. 1 ¶¶ 2, 10). According to

---

[1] Travelers Casualty & Surety Company of America ("Travelers") is a third-party defendant in this action. (*See* ECF No. 16). However, facts pertaining to Travelers are omitted here because Travelers is not a pertinent party to either pending motion.

the contract, Myers agreed to "build an enclosed concrete reservoir for Montebello Plant 2, a water filtration plant" ("the project"). (*Id.*). Myers formed a subcontract with Metromont on July 28, 2010 wherein Metromont agreed to supply "precast concrete double tee beams, inverted girders, and connections[,]" to construct the reservoir roof. (ECF Nos. 1 ¶ 11 & 1-1, at 2). The standard purchase order for the materials indicated that they were to "strictly comply with the requirements of the [prime] [c]ontract['s] . . . plans and specifications[][,]" (ECF No. 1-1, at 2), as put forward by the Project's "registered design professional" (ECF No. 1 ¶ 15). Metromont supplied the requested materials and Myers used the materials to construct the reservoir roof.[2] (*See* ECF No. 1 ¶¶ 13, 17-18).

The parties agree that "[t]he reservoir's large roof system experienced problems with cracking concrete at various connection points in July 2011[.]"[3] (ECF Nos. 1 ¶ 17 & 9 ¶ 14). To resolve

---

[2] The parties dispute whether Plaintiff designed the materials according to the prime contract's plans and specifications. Metromont asserts that it designed the materials pursuant to the Prime Contract's specifications (ECF No. 1 ¶ 14) and Myers contends that Plaintiff failed to do so (ECF No. 9 ¶¶ 15, 17). This question is one of the bases for the administrative proceedings and appeal. *See infra*, at 3-4.

[3] Metromont contends that the concrete cracked because "the enormous rigid structure could not accommodate movement caused by

the issue, Myers and the City agreed to replace the "rigid welded connections" with "slip-joints[.]"[4] (ECF Nos. 1 ¶ 18 & 9 ¶ 17). "On or about August 20, 2012, Myers submitted a change order request to the city, seeking an equitable adjustment of $1,993,382.56 for the additional work involved in implementing the slip joint connection fix, which Myers later revised on or about March 13, 2015 to a total sum of $4,699,735.91." (ECF No. 9 ¶ 19). The City questioned Myers's change order request, "triggering the dispute resolution terms of the [p]rime [c]ontract." (ECF No. 9 ¶ 20). From September 10, 2012 through November 19, 2018, Myers was involved in six years of administrative proceedings regarding its claim for a contractual equitable adjustment. (ECF No. 9 ¶¶ 20-23, 25-27). The City's Deputy Director of Public Works issued a final administrative decision denying Myers's change order on

---

thermal and seismic pressures." (ECF No. 1 ¶ 17). Myers maintains that "Metromont failed to calculate thermal loads in its design of [the materials], in derogation of the" plans and specifications stated in the prime contract. (ECF No. 9 ¶ 15).

[4] Metromont maintains that: (1) this constituted a "material and fundamental change in the original plans and specifications from the City[;]" (2) it did not design the new slip-joint connections; and (3) "these modifications . . . were not part of the original plans and specifications issued by the City [.]" (ECF No. 1 ¶¶ 18-19). Alternatively, Myers asserts that these new connections were designed to "correct Metromont's design errors" by "account[ing] for the thermal loads that Metromont originally failed to take into consideration." (ECF No. 9 ¶ 17).

November 19, 2018, concluding that Myers failed to meet its burden for adequately calculating the thermal loads in its design of the roof structure members.[5] (ECF No. 9-5, at 13-17). Myers filed a still-pending appeal of the administrative decision in the Circuit Court for Baltimore City ("State Claim") on November 27, 2018.[6] (ECF No. 9 ¶ 28). Metromont did not join the appeal either voluntarily (ECF No. 9 ¶ 29) or via compulsory joinder (ECF No. 26-1, at 2).

Metromont commenced this action on December 19, 2018, alleging one count of breach of contract based on Myers's refusal to pay Metromont. (ECF No. 1). Metromont seeks damages in the amount of $1,015,000.00 plus pre- and post-judgment interest. (*Id.*). Myers filed an answer and counterclaim against Metromont on February 1, 2019, alleging four counts: (1) breach of contract;

---

[5] Based on this decision, Myers asserts that "Metromont failed to comply with the requirements of the subcontract" (ECF No. 9 ¶ 27) and Metromont contends that "the administrative decision addresses only the contractual dispute between Myers and the City" (ECF No. 17, at 6).

[6] The Maryland Judiciary Case Search website indicates that the Department of Public Works administrative decision was affirmed on June 5, 2019. However, the docket also reflects that Myers filed a motion for reconsideration of the appeal decision on July 8, 2019. *See In the Matter of the Petition of Allan Myers, L.P.,* Case Number 24C18006397 (Circuit Court for Baltimore City), http://casesearch.courts.state.md.us/casesearch/inquiryByCaseNum.jis.

(2) breach of warranty; (3) negligent design; and (4) indemnification. (ECF No. 9). Myers's counterclaim seeks damages in the amount of $4,699,735.91, attorneys' fees, pre- and post-judgment interest, and "such additional direct, indirect, consequential, general and special damages as may be proven at trial[.]" (*Id.*, at 23). Myers also filed a motion to stay, or in the alternative, motion to dismiss on February 15, 2019. (ECF No. 13). Metromont filed a response in opposition to Myers's motion to stay (ECF No. 17) and an answer to Myers's counterclaim on March 1, 2019 (ECF No. 16). Myers filed a motion for a more definite statement on March 21, 2019 (ECF No. 22) and Metromont opposed the motion on April 4, 2019 (ECF No. 25).

**II. Motion to Stay or Dismiss**

    **A.** *Colorado River*

Myers argues that this action should be stayed or dismissed pursuant to the doctrine established by the Supreme Court of the United States in *Colorado River Water Conservation District v. United States,* 424 U.S. 800 (1976), because "a determination as to liability in the [pending state court] [a]ppeal will prove

dispositive of Metromont's claims in this case."[7]  (ECF No. 13, at 2).

In response, Metromont argues that the *Colorado River* abstention doctrine is not applicable here and abstention is not appropriate because "[f]ederal courts with jurisdiction over a case can abstain from hearing it in deference to state-court proceedings only in truly 'extraordinary circumstances'—not as a matter of convenience or efficiency."  (ECF No. 17, at 2).

Generally, "our dual system of federal and state governments allows parallel actions to proceed to judgment until one becomes preclusive of the other."  *Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 462 (4th Cir. 2005).  Thus, the mere fact

---

[7] There is little distinction between a stay and dismissal request under *Colorado River*:

> [A] stay is as much a refusal to exercise federal jurisdiction as a dismissal.  When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. . . .  Thus, the decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses.

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983).

6

that an action is pending in a state court "is no bar to proceedings concerning the same matter in the [f]ederal court having jurisdiction." *McLaughlin v. United Va. Bank,* 955 F.2d 930, 934 (4th Cir. 1992) (internal quotation marks omitted).  Indeed, "federal courts are bound by a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" *Chase Brexton,* 411 F.3d at 462 (quoting *McClellan v. Carland,* 217 U.S. 268, 282 (1910)).  It is well established, however, that "federal courts may decline to exercise their jurisdiction, in otherwise 'exceptional circumstances,' where denying a federal forum would clearly serve an important countervailing interest[.]" *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 716 (1996) (*quoting Colorado River,* 424 U.S. at 813) (internal quotation marks omitted).  The "exceptional circumstances" in which abstention is appropriate "inevitably relate to a policy of avoiding unnecessary constitutional decisions of accommodating federal-state relations." *Chase Brexton,* 411 F.3d at 462. "Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River,* 424 U.S. at 813.

The "threshold question in deciding whether *Colorado River* abstention is appropriate is whether there are parallel federal and state suits." *Chase Brexton,* 411 F.3d at 463.  If the

7

suits are parallel, the court must balance a number of factors in considering whether "exceptional circumstances" are presented, thereby warranting its abstention. *See Gannett Co. v. Clark Constr. Group, Inc.,* 286 F.3d 737, 741 (4th Cir. 2002).

"Simultaneous federal and state suits are deemed parallel if 'substantially the same parties litigate substantially the same issues.'" *Extra Storage Space,* 527 F.Supp.2d 462, 466 (D.Md. 2007) (quoting *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.,* 946 F.2d 1072, 1073 (4th Cir. 1991)). The similarity of the suits is generally assessed in terms of the identity of the parties, the legal issues, and the remedies sought in the respective cases. *See Great Am. Ins. Co. v. Gross,* 468 F.3d 199, 207–08 (4th Cir. 2006). "Although the parties in the concurrent suits need not be identical, the [United States Court of Appeals for the] Fourth Circuit has strictly construed the requirement that the parties be substantially the same." *Extra Storage Space*, 527 F.Supp.2d at 466.

The parties in the two suits are not substantially the same. The state administrative action "involves a contractual dispute between [] Myers [] . . . and the Baltimore City Department of Public Works[.]" (ECF No. 17-1, at 4). Although Metromont received a copy of the administrative decision, it is not listed

as a party to the administrative proceedings and, accordingly, would not be a party in Myers's administrative appeal. (*Id.*, at 22). Because Metromont is not a party to the pending state court litigation, the parties are not "substantially the same" and staying this litigation "would deprive [Plaintiff] of the opportunity to litigate its claims." *Great Am. Ins.*, 468 F.3d at 208; *see also Chase Brexton*, 411 F.3d at 464 ("[F]ive of the federal plaintiffs [are] not involved in pending administrative appeals. . . . [T]o abstain in favor of those state administrative appeals would deprive [those plaintiffs] of the opportunity to litigate their claims.").

Furthermore, different legal issues underpin the state action and the claim pending here. At issue in the state action is Myers's request for additional compensation "for work undertaken to remediate the significant cracking and spalling that occurred in the roof structure during construction." (ECF No. 17-1, at 15). Here, Metromont seeks compensation under its subcontract with Myers. Because the state and federal lawsuits are predicated on different contracts and seek different damage awards, they require different "legal and factual inquiries" to "prove the existence and content of [the respective] agreement[s][.]" *Barcoding, Inc. v. Genet*, No. 11-cv-2026-JKB, 2011 WL 4632575, at

*4 (D.Md. Sept. 30, 2011). Although the claims involve the same facts and related contracts, similarities alone are not necessarily indicative of parallel litigation. *See, e.g.*, *New Beckley*, 946 F.2d at 1074 ("Some factual overlap does not dictate that proceedings are parallel."); *Genet*, 2011 WL 4632575, at *4 ("While these claims obviously contain a common question of fact . . . they are not substantially the same."). Most importantly, "the state action will not resolve [the] claim at issue [here]." *vonRosenberg v. Lawrence*, 849 F.3d 163, 169 (4th Cir. 2017); *see also Moses H. Cone*, 460 U.S. at 28 (finding that federal courts should only abstain upon "concluding that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of issues between the parties[.]"). Finally, the remedy sought in each suit also differs. Metromont seeks damages from Myers in the amount of $1,015,000.00 in this suit, whereas Myers seeks $4,699,735.01 from the City in the state claim. Thus, Myers's ongoing state suit is not parallel to this action.

The Fourth Circuit explained in *Ackerman v. ExxonMobil Corp.*, 734 F.3d 237, 248–49 (4th Cir. 2013):

> Because *Colorado River* abstention is premised on consideration of "wise judicial administration" rather than the "weightier considerations of constitutional adjudication and state-federal relations" underpinning

10

> other abstention doctrines, *Colorado River,* 424 U.S. at 818, its application is proper in a "more limited" range of circumstances, *id.* When courts consider requests to abstain, the task "is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court, rather, our task is to ascertain whether there exist exceptional circumstances, the clearest of justifications, . . . to justify the *surrender* of that jurisdiction." *Moses H. Cone,* 460 U.S. at 25–26 (internal quotation marks omitted).

Because the two proceedings are not parallel, the court need not consider the factors justifying "exceptional circumstances" under *Colorado River.*

### B. "Pay-if-Paid" Clause

Myers next argues that the case should be stayed, or alternatively, dismissed because "Metromont's claim is predicated upon a 'pay-if-paid' payment provision in its subcontract that includes a condition precedent that has not yet been satisfied, and moreover, is entirely dependent upon the outcome of the Appeal." (ECF No. 13, at 2). Metromont argues that dismissal based on the purported pay-if-paid clause is not appropriate at this procedural posture because "it is [] disputed whether the parties even agreed to condition Myers's payment to Metromont on the City's payment to Myers." (ECF No. 17, at 14).

11

Myers does not specify which Federal Rule of Civil Procedure entitles it to a dismissal by means of this alternative argument. Regardless, the argument is in the nature of an affirmative defense and Myers actually raises it as an affirmative defense in its answer. (ECF No. 9, at 9-10). While "the power to stay proceedings is incidental to the power inherent in every court to control . . . its docket with economy of time and effort for itself," *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936), dismissing this litigation per factually-disputed affirmative defenses would be inappropriate at this juncture. *See Horlick v. Capital Women's Care, LLC,* 896 F.Supp.2d 378, 394 (D.Md. 2011) (denying a motion to dismiss because disputes regarding "the construction of a contract [are] [] question[s] of fact" to be dealt with during discovery) (internal citation and quotation marks omitted); 5 Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1277 (3$^d$ ed. 2019) ("Wright and Miller") ("[T]he facts necessary to establish an affirmative defense generally must be shown by matter outside the complaint[.]").

Accordingly, Myers's motion to stay, or alternatively, dismiss will be denied.

**III. Motion for a More Definite Statement**

Myers requests a more definite statement under Federal Rule of Civil Procedure 12(e) of the first affirmative defense asserted in Metromont's answer to Myers's counterclaim. Specifically, Myers states: "Myers assert[s] thirty-three (33) [a]ffirmative [d]efenses to Metromont's [c]omplaint, to the extent that any of these affirmative defenses are found applicable to the laws and facts of this case, then Metromont reserves its right to assert any such affirmative defense against Myers's [c]ounterclaim." (ECF No. 16, at 8). Myers argues that Metromont's first affirmative defense fails to comply with pleading requirements under the Federal Rules of Civil Procedure and *Twombly* and *Iqbal*. (*Id.*, at 4-6). Thus, Myers concludes that Metromont should be compelled to "file a more definite statement of its [f]irst [a]ffirmative [d]efense." (ECF No. 22, at 2).

Metromont responds that Myers's motion "never should have been filed and should not be granted" because the first affirmative defense in Metromont's answer merely "incorporates the same 33 affirmative defenses that Myers asserted in its [a]nswer" and requires no further clarification. (ECF No. 25, at 1-2).

The decision whether to grant a motion for a more definite statement is committed to the discretion of the district court.

*See Crawford-El v. Britton*, 523 U.S. 574, 597–98 (1998). Rule 12(e) provides, in relevant part:

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired.

Wright and Miller § 1376 provides guidance on the availability of a motion for a more definite statement:

> The language of Rule 12(e) suggests that it should ordinarily not be directed at a pleading that does not contain a claim for relief. Inasmuch as no responsive pleading is required to a pleading that does not contain a claim, it should not be subject to a motion for a more definite statement. The purpose of Rule 12(e) is to permit litigants to procure information needed to frame a responsive pleading, not as a substitute for discovery or as a mechanism for determining whether to seek leave to serve a permissive pleading. However, if the court orders a reply in response to an answer containing affirmative defenses, such an answer would become subject to a motion under Rule 12(e) as a means of enabling the party to frame its reply.

Here, Myers requests a more definite statement of the affirmative defense(s) advanced in Metromont's answer. Myers asserts that it can file a Rule 12(e) motion because a reply can be filed in response to an answer. (ECF No. 22, at 3 n.1) (citing Fed.R.Civ.P.

14

7(a)(7)). However, Myers misconstrues Rule 7(a)(7), which states that pleadings are not permitted in response to an affirmative defense or answer unless ordered by the court. Myers was not ordered to file a response to Metromont's answer. Consequently, Rule 12(e) is not the appropriate mechanism for disputing Metromont's first affirmative defense. *See, e.g.*, *Advanced Diagnostics Mgmt. L.L.P. v. GE Healthcare, Inc.*, No. CV H-12-0749, 2012 WL 12937485, at *1 (S.D.Tex. May 4, 2012) ("The court has not ordered plaintiff to reply to defendant's affirmative defenses, and thus Rule 12(e) does not apply here."); *Armstrong v. Snyder*, 103 F.R.D. 96, 100 (E.D.Wis. 1984) (finding that, because "there [wa]s no requirement that the plaintiff prepare a pleading responsive to the defendant's amended answer[,] . . . the plaintiff's request for a more definite statement of the answer [wa]s wholly unwarranted and w[ould] be denied on that basis.").

However, Myers also takes issue with the general sufficiency of Metromont's pleading and requests that "Metromont's affirmative defenses . . . be stricken in their entirety." (ECF No. 22, at 5). "If [a party] believes a defense is insufficient, [it] should move to strike it under Rule 12(f), rather than seeking its clarification under Rule 12(e)." Wright and Miller § 1376. Myers's request will be construed as a motion to strike under Rule

12(f), which states that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Although the court maintains wide discretion in considering a motion to strike, see *Haley Paint Co. v. E.I. Du Pont De Nemours & Co.*, 279 F.R.D. 331, 336 (D.Md. 2012), "Rule 12(f) motions are generally viewed with disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic.'" *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (quoting Wright and Miller § 1380).

"[T]he mere reservation of affirmative defenses is not an affirmative defense." *Rashid v. Washington Metro. Area Transit Auth.*, No. 17-cv-0726-DKC, 2018 WL 1425978, at *4 (D.Md. Mar. 22, 2018) (quoting *Kohler v. Staples the Office Superstore, LLC*, 291 F.R.D. 464, 473 (S.D.Cal. Feb. 12, 2013) (internal quotation marks omitted)); *see also* Fed.R.Civ.P. 8(c) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense[.]"). Rather, the reservation of the right to assert an affirmative defense is a "legal nullity." *See, e.g., Fed. Deposit Ins. Corp. v. Giannoulias*, No. 12-c-1665, 2014 WL 3376892, at *9 (N.D.Ill. July 10, 2014) ("The defendants' 'reservations of rights' are stricken as a legal nullity."); *Wells*

*v. Farmers All. Mut. Ins. Co.*, No. 2:07CV00036 ERW, 2009 WL 1259977, at *7 (E.D.Mo. May 4, 2009) (striking defendant's answer to the extent it reserved the right to assert an affirmative defense); *Messick v. Patrol Helicopters, Inc.*, No. 07-CV-039, 2007 WL 2484957, at *4 (D.Mont. Aug. 29, 2007) ("The Federal Rules of Civil Procedure do not provide a mechanism for a party to 'reserve the right' to assert a defense."). To assert an affirmative defense, a party must either do so in its initial answer or move to amend its initial answer to add an additional defense. Thus, Metromont's "first affirmative defense" has not properly asserted any defenses. Metromont's first affirmative defense will be stricken pursuant to Fed.R.Civ.P. 12(f). *See Messick,* 2007 WL 248957, *4 ("Courts strike reserved affirmative defenses because they do not actually assert a defense.").

"When affirmative defenses are stricken, the defendant should normally be granted leave to amend." *Haley Paint Co.*, 279 F.R.D. at 336 (D.Md. 2012). Accordingly, Metromont will be provided 21 days to amend its answer.

                                                   /s/
                                  DEBORAH K. CHASANOW
                                  United States District Judge